UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RAMIJE R.,

    **Plaintiff,**

v.

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**[1]

    **Defendant.**

Case No. 2:20-cv-14073
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Ramije R. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.    PROCEDURAL HISTORY**

    On September 12, 2017, Plaintiff filed her application for benefits, alleging that she has been disabled since November 1, 2015. R. 68, 78, 156–59. The application was denied initially and upon reconsideration. R. 87–91, 95–97. Plaintiff sought a *de novo* hearing before an

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

administrative law judge. R. 98–99. Administrative Law Judge ("ALJ") Douglass Alvarado held a hearing on March 15, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 36–67. In a decision dated June 20, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from November 1, 2015, Plaintiff's alleged disability onset date, through June 30, 2017, the date on which Plaintiff was last insured for Disability Insurance Benefits. R. 18–27. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on August 10, 2020. R. 18–27. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 15, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[2] On that same day, the case was reassigned to the undersigned. ECF No. 10. The matter is now ripe for disposition.

## II.      LEGAL STANDARD

### A.      Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

4

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

5

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.  ALJ DECISION AND APPELLATE ISSUES

Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2017, R. 20, and she was 48 years old on that date, R. 25. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between November 1, 2015, her alleged disability onset date, through June 30, 2017. *Id.*

At step two, the ALJ found that Plaintiff 's degenerative disc disease, degenerative joint disease, status post total knee replacement of bilateral knees, and obesity were severe impairments. *Id.* The ALJ also found that Plaintiff's diagnosed hypertension and alleged rheumatoid arthritis were not severe impairments. R. 21.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 21–22.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 22–25. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as an administrative assistant and photographer's helper. R. 25.

At step five, the ALJ found that a significant number of jobs–*i.e.*, approximately 66,203 as a document preparer; approximately 7,938 jobs as a call out operator; and approximately 5,141 jobs as a telephone quotation clerk–existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 26–27. The ALJ therefore concluded that Plaintiff was not disabled at any time within the meaning of the Social

Security Act from November 1, 2015, her alleged disability onset date, through June 30, 2017, the date on which she was last insured. R. 27.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 16. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 15.

## IV. SUMMARY OF RELEVANT MEDICAL EVIDENCE

Plaintiff's treating physician, Lisa Melsky, M.D., completed a six-page, check-the-box and fill-in-the-blank medical source statement regarding Plaintiff's ability to perform work-related activities. R. 386–91.[3] Dr. Melsky measured Plaintiff's abilities using terms defined as follows: "regular and continuous basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule; "occasionally" means very little to one-third of the time; "frequently" means from one-third to two-thirds of the time; and "continuously" means more than two-thirds of the time. R. 386. According to Dr. Melsky, Plaintiff could occasionally lift up to 20 pounds and carry up to 10 pounds, *id.*, could walk less than one hour at a time without interruption and could sit and stand for one hour at a time, for a total of two hours in an eight-hour work day. R. 387. A cane was medically necessary, although Plaintiff could carry small objects with her free hand while using a cane. *Id.* Plaintiff, who is right-hand dominant, could occasionally, with both

---

[3] Although not apparent on the statement, the Court Transcript Index indicates that Dr. Melsky completed this form on January 10, 2019.

hands, reach overhead, handle, finger, feel, and push/pull. R. 388. She could never operate foot controls with either foot and could never climb stairs, ramps, ladders, or scaffold, nor could she balance, stoop, kneel, crouch, or crawl. R. 388–89. She could never be exposed to unprotected heights, move mechanical parts, operate a motor vehicle, nor could she be exposed to humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold, extreme heat, or vibration; she would require a quiet environment. R. 390. Dr. Melsky indicated that, based on her physical impairments, Plaintiff could perform the following activities: shopping; traveling without a companion for assistance; ambulating without using a wheelchair, two canes, or two crutches; using standard public transportation; climbing a few steps at a reasonable pace with the use of a single hand rail; preparing a simple meal and feeding herself; caring for her personal hygiene; sorting, handling or using paper/files. R. 391. Finally, Dr. Melsky stated that these limitations have lasted or would last for twelve consecutive months. *Id*.

## V.     DISCUSSION

Plaintiff challenges the ALJ's RFC determination, arguing that the ALJ erred in considering Dr. Melsky's opinions. *Plaintiff's Memorandum of Law*, ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 16. This Court agrees.

A claimant's RFC is the most the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only

"credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In addition, the ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527

---

[4] As previously noted, Plaintiff's claim was filed on September 12, 2017.

*with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2).

11

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive he find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id.* at § 404.1520c(b). "Specifically, the ALJ must explain how he considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

At step four of the sequential evaluation process in this case, the ALJ found that Plaintiff had the RFC to perform a limited range of sedentary work as follows:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except … she: is able to stand and stretch at the workstation after one hour of sitting; is able to sit for 1-5 minutes at the workstation after 30 minutes of standing or walking; and is able to use a hand held assistive device when standing or walking. She can never climb ladders, ropes and scaffolds or crawl; can frequently stoop; and can occasionally kneel and crouch. She can frequently reach overhead bilaterally; and can frequently handle and finger bilaterally. The claimant can have occasional exposure to humidity, wetness and extreme cold; and can never be exposed to unprotected heights, hazardous moving mechanical parts or operate a motor vehicle.

R. 22. In reaching this determination, the ALJ considered, *inter alia*, Dr. Melsky's opinions, but did not find her opinions persuasive, reasoning as follows:

> Dr. Melsky reported that the claimant can lift 20 pounds occasionally and carry 10 pounds occasionally; can sit for two hours but only for one hour without interruption; can stand for two hours but only for one hour without interruption; and can walk for one hour. The claimant was noted to use a cane to ambulate, as needed, and to be able to use her freehand to carry small objects. The claimant can occasionally reach, handle, finger and feel bilaterally and can never push or pull or use foot controls bilaterally. She can never climb ramps, stairs, ladders or scaffolds, balance, stoop, kneel, crouch or crawl. She can never be exposed to unprotected

12

>heights, moving mechanical parts, operate a motor vehicle or have exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat or vibration and requires a quiet noise environment (Ex. 9F). This opinion was offered by the claimant's own medical source but is unsupported by treatment records found at l0F, which, at most, find paraspinous muscle spasm and tenderness over lumbar spine and stiffness and inflammation of knees with no specified limitations on examination. X-rays of her lumbosacral spine shows [sic] apparent demineralization of bones with mild compression of superior endplate at L1 through L3 and mild dextrocurvature at L3. Treatment notes report occasional use of a cane. For these reasons, I do not find this opinion persuasive.

R. 24.

As noted above, Plaintiff challenges the ALJ's consideration of Dr. Melsky's opinions, arguing, *inter alia*, that the ALJ did not sufficiently explain why she found this treating physician's opinions to be unsupported. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 8–16 (citations to the record omitted); *Plaintiff's Reply Brief*, ECF No. 16. Plaintiff specifically argues that the evidence referred to by the ALJ tends to support Dr. Melsky's opinions, rather than undermine those opinions, and that other evidence in the record also supports this treating physician's opinions. *Id*. For example, in rejecting Dr. Melsky's opinions, the ALJ referred to Dr. Melsky's finding of "stiffness and inflammation of knees with no specified limitations on examination," R. 24, but it was her knee impairment that eventually required that Plaintiff undergo a total knee replacement. *But see* R. 23 (reflecting ALJ's acknowledgement that Plaintiff "had total knee replacement of left knee on September 25, 2018 . . . . Prior to surgery, she was noted to walk with a slight limp. She had tenderness to palpation, crepitus and pain in her range of motion."). The ALJ also referred to Dr. Melsky's finding of "paraspinous muscle spasm and tenderness over lumbar spine," R. 24, and Plaintiff points to the x-rays showing apparent demineralization of bones with mild compression of superior endplate at L1 through L3 and mild dextrocurvature at L3 and occasional use of a cane – findings that Plaintiff argues support Dr. Melsky's opinions. According to Plaintiff, the ALJ has impermissibly played doctor

13

and has improperly interpreted raw medical data. *Id*. at 11–13. Plaintiff also argues that the ALJ wholly failed to explain how Dr. Melsky's opinions are inconsistent with any record evidence. *Id*. at 10; *Plaintiff's Reply Brief*, ECF No. 16.

On the other hand, the Acting Commissioner argues that the record evidence, including Plaintiff's daily activities, supports the ALJ's RFC determination. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 15, pp. 9–10 (citations omitted). The Acting Commissioner contends that the ALJ "complied with the new regulations when considering the medical opinions" and asserts that, "[c]onsistent with the new regulations, the ALJ found Dr. Melsky's opinion not persuasive because it was unsupported by the treatment records[.]" *Id*. at 10–11 (reciting the ALJ's summary of Dr. Melsky's findings reflected in the treatment records). In reply, Plaintiff characterizes the Acting Commissioner's arguments as nothing more than impermissible *post hoc* rationalization in an attempt to build a logical bridge between the evidence and the ALJ's decision. *Plaintiff's Reply Brief*, ECF No. 16, pp. 2–5. Plaintiff also continues to argue that the ALJ failed to explain how he considered the factors of supportability and consistency, which the new regulations require. *Id*.

Plaintiff's arguments are well taken. As Plaintiff highlights, the ALJ points to Dr. Melsky's treatment notes reflecting paraspinous muscle spasm and tenderness over the lumbar spine and stiffness and inflammation of the knees with no specified limitations on examination; x-rays of Plaintiff's lumbosacral spine showing apparent demineralization of bones with mild compression of superior endplate at L1 through L3 and mild dextrocurvature at L3; and occasional use of a cane. R. 25. Yet, the ALJ did not explain—nor is it apparent to the Court—how this evidence does not support Dr. Melsky's opinions. *Id*. Notably, even if citation to this evidence was sufficient to meet the supportability factor, it is not sufficient to satisfy the

consistency factor of the new regulations. *See id.*; *see also Darla W. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1085, 2021 WL 5903286, at *5 (N.D.N.Y. Dec. 14, 2021) ("Under the consistency factor, a medical opinion or prior administrative medical finding is 'more persuasive' if it is consistent 'with the evidence from other medical sources and nonmedical sources in the claim.'") (quoting 20 C.F.R. § 404.1520c(c)(2)). The ALJ's decision is silent as to whether, or in what way, Dr. Melsky's opinions were inconsistent with her own treatment notes or other record evidence. R. 25.

"The new regulations promulgated by the Social Security Administration set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 FR 5844-01, and citing 20 C.F.R. §§ 404.1520c(b) and 416.920c(b)). As this Court's summary of the evidence set forth above makes clear, "the ALJ's failure in this case to meet these minimum levels of articulation frustrates this court's ability to determine whether [his] disability determination was supported by substantial evidence." *Id.*; *see also Brownsberger v. Kizakazi*, No. 3:20-CV-01426, 2022 WL 178819, at *6–7 (M.D. Pa. Jan. 18, 2022) (finding that substantial evidence did not support the ALJ's assessment of medical opinions where the ALJ "makes no effort to compare or support their opinions with the record. . . . The ALJ does not provide any citations to specific evidence on the record to explain his reasoning and does not explain how he evaluated the opinions regarding the supportability and consistency factors"); *Jaleesa H. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01180 EAW, 2022 WL 174337, at *5–6 (W.D.N.Y. Jan. 18, 2022) (stating that, under the new regulations, the ALJ "is still required to articulate how he considered the medical opinion, including explaining how he considered the 'supportability' and

15

'consistency' factors" and that the ALJ in that case "did not explain anything—instead, he made a conclusory statement that Dr. Fabiano's opinion was 'generally consistent and supportive,' without any explanation of how he assessed the opinion in connection with the consistency and supportability factors which, as explained above, is required by the new regulations"); *Nicole L. v. Kijakazi*, No. 6:20-CV-01576, 2022 WL 160274, at *8 (N.D.N.Y. Jan. 18, 2022) ("But without some clear discussion of the supportability factor the Court is left to guess at the ALJ's reasoning, which frustrates meaningful review.").

Furthermore, the Court cannot conclude that the ALJ's failure to explain his evaluation of Dr. Melsky's opinions is harmless. This is particularly so because Dr. Melsky opined, *inter alia*, that Plaintiff could sit for a total of only two hours in an eight-hour workday, R. 387, but the RFC does not reflect this limitation. R. 22; *see also* SSR 83-10 (stating that, for sedentary work, "sitting should generally total approximately 6 hours of an 8-hour workday"). In addition, Dr. Melsky opined that Plaintiff could, *inter alia*, only occasionally handle and finger bilaterally, and the vocational expert testified that the jobs identified by him and adopted by the ALJ—*i.e.*, document preparer, call-out operator, and telephone quotation clerk—as well as other sedentary jobs, would not be available to an individual who could only occasionally handle and finger bilaterally. R. 26–27, 65.

Finally, the Court rejects the Acting Commissioner's argument that the record contains evidence or reasons sufficient to support the ALJ's decision to discount Dr. Melsky's opinions. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 15, pp. 9–11. The ALJ did not rely on this evidence or rationales in discounting Dr. Melsky's opinions. R. 25. The Acting Commissioner's *post hoc* rationalization in this regard must therefore be rejected. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir.

2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001) (stating that a district court should not substitute its own independent analysis for reasoning not mentioned by the ALJ) (citations omitted); *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678, 2019 WL 1042532, at *6 (D.N.J. Mar. 5, 2019) ("The Court is only permitted to consider the ALJ's decision based on the rationale contained in that decision; the Court is not to consider hypothetical rationales, which may justify the ALJ's decision, but which were not in fact underlying the opinion in question.") (citation omitted).

     This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate. Moreover, remand is warranted even if, upon further examination of Dr. Melsky's opinions and the RFC determination, the ALJ again finds that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings.

Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI.   CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  March 29, 2022                              *s/Norah McCann King*
                                               NORAH McCANN KING
                                           UNITED STATES MAGISTRATE JUDGE